UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL UNION FIRE INSURANCE CO., et al.<br><br>    Defendants. | CASE NO. C12-13 MJP<br><br>ORDER GRANTING CHARTIS CLAIMS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 76), DENYING OTHER MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 79) |

This matter comes before the Court on Navigators Insurance Company's ("Navigators") motion for partial summary judgment as to coverage (Dkt. No. 67), Defendant Chartis Claims' ("Chartis") motion for summary judgment (Dkt. No. 76), and Defendant Chartis and National Union Fire Insurance Company's ("National Union") cross-motion for summary judgment (Dkt. No. 79). The Court reviewed the motions, the responses, the replies, and all related papers. The Court listened to oral argument from the parties on January 17, 2012. Based on this record, the

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 1

Court GRANTS Defendant Chartis' motion for summary judgment, but DENIES the other two pending motions for summary judgment.

**Background**

This is a claim for contribution by one property insurer, Navigators, against National Union and National Union's claims administrator, Chartis Claims. The underlying claim results from the expansion of the Westfield South Center Mall ("Westfield"). The general contractor, Bayley Construction ("Bayley"), subcontracted with SAK to construct parking decks on the roof of the newly expanded mall. The parking decks were poured concrete covered with a waterproof membrane in order to prevent intrusion into the Mall and tenant spaces below. SAK poured the concrete for the parking decks in late 2007. Shortly thereafter, other subcontractors applied a waterproof membrane. These contractors complained about cracks in the concrete poured by SAK. In 2008, water intrusion was discovered in the areas below the parking deck. The record before this Court provides little information to establish what actually caused the water intrusion.

Westfield notified Bayley of its claim in a letter dated May 2, 2011. The letter stated, "numerous demands have been made over the past two years to Bayley Construction as well as to its subcontractor Pioneer Waterproofing and its material supplied by Stirling Lloyd, Inc. to evaluate, repair, and replace the defective traffic coating system." (Dkt. No. 68-3.) SAK was not specifically identified as a cause of the defect, although the "slab" was mentioned.

Bayley tendered a claim to its subcontractor's insurance companies, including the primary insurer for SAK, Zurich. In June of 2011, Bayley also tendered a claim to National Union, as an additional (excess) insurer of the SAK 2007-2008 policy. This Order is only concerned with coverage for the underlying claim as it relates to SAK and its primary and excess insurance companies. National Union denied the claim, maintaining that coverage did not exist

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 2

because SAK cancelled the 2007-2008 policy and the damage occurred during the next policy year. Although National Union was the original excess insurer for the 2008-2009 year, SAK cancelled that policy. The parties agree the 2008-2009 policy does not cover the claims.

After SAK cancelled the National Union 2008-09 policy, Navigators became the excess insurer of the Zurich policy. Navigators conducted its own investigation and concluded that the damage commenced in 2007 and should be also covered by the National Union excess policy. (Dkt. No. 72-3.)

Bayley and Westfield settled their claims. Bayley filed this lawsuit in 2012. Shortly after, Navigators, Zurich, and the other subcontractors' insurance companies settled with Bayley ("Settlement Agreement"). Zurich paid $1, 000, 0000 for the SAK 2007-08 and 2008-09 policies. Both policy periods are listed in the agreement. National Union did not participate in the settlement negotiations or the final agreement. As part of the Settlement Agreement, Bayley assigned its "reserved" claims to Navigators so it could pursue equitable contribution and other claims against National Union.

## Discussion

A. <u>Legal Standard</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Triton Energy Corp. v.

Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." Triton Energy, 68 F.3d at 1221.

The Court's task in interpreting an insurance contract is well-settled: it looks to the whole contract, giving it a fair, reasonable, and sensible construction. Holden v. Farmers Ins. Co., 169 Wn.2d 750, 755–56 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty., 112 Wn.2d 1, 11 (1989). Put another way, a court "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms." McAllister v. Agora Syndicate, Inc., 103 Wn. App. 106, 110 (2000). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. McAllister, 103 Wn. App. at 110.

B. Claims Against Chartis

Chartis moves for summary judgment contending the Settlement Agreement did not include an assignment from Bayley to Navigators of any claims against Chartis. Based on a plain reading of the Settlement Agreement, the Court agrees. The settlement agreement contained the following reservation and assignment to Navigators:

> All contractual and extra-contractual claims by Bayley and Navigators against NUFIC arising out of its investigation, handling and claims decisions <u>under policies issued by NUFIC or affiliated entities to SAK</u> as a Named Insured which may provide coverage for Bayley as an additional insured, including but not limited to Navigators direct claims for contribution or equitable remedy against NUFIC.

(Settlement Agreement, Dkt. No. 72-2 at 5).  The only claims reserved and assigned to Navigators were against National Union.  While the Settlement Agreement does include the phrase "affiliated entities," in context this assignment can only be read to include claims against those affiliated entities that issued policies to SAK.  The parties agree that Chartis itself issued no policies to SAK, but rather, served as a claims administrator.  Consequently, no claim against Chartis was properly reserved and assigned to Navigators.  Because Navigators lacks standing to assert claims for Chartis' investigation, handling, and claims decision relating to the NUIFIC policy, the Court grants summary judgment in Chartis' favor.

C.  <u>Coverage of National Union Policy</u>

Navigators moves for summary judgment arguing once the Zurich policy was exhausted, as an excess insurer, National Union's obligations were automatically triggered.  By failing to establish Zurich exhausted its 2007-08 policy and that the property damage was caused by the insured (SAK) during that policy year, Navigators puts the cart before the horse. First, a genuine dispute remains about whether the Zurich policy has been exhausted.  As the scheduled underlying insurance, exhaustion of the Zurich policy is a prerequisite for any obligation under the National Union policy.  The record before this Court shows Zurich paid $1,000,000 in the settlement agreement, listing both the Zurich 2007-08 and the 2008-09 policies as the basis. (Dkt. No. 72-7 at 3.)  Prior to that payment, Zurich numerous times changed its assignment of the claim to the 2007-08 and 2008-09 policy years.  (Dkt. No. 71, 72.)  Just prior to the Settlement Agreement, the record indicates Zurich concluded it was both.  (Dkt. No. 72.)

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 5

In light of the Settlement Agreement's plain language implicating two different policy years and Zurich's own seeming inability to decide what year to assign the claim, Zurich's October 10, 2012 letter to National Union, administratively reassigning payment of the $1,000,000 to the 2007-08 policy, does not eliminate these factual questions. In the light most favorable to National Union, this Court finds genuine issues of material fact as to exhaustion of the Zurich policy.

Second, issues of fact remain as to whether the underlying claim is covered by the 2007-08 policy. To succeed in this contribution action (and in this motion), Navigators must establish the National Union policy covered the underlying claim, such that it is legally obligated to provide a defense or indemnity coverage. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 419 (2008). The National Union policy is limited to those claims where "the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising to which this insurance applies…" (Dkt. No. 73-1 at 9.) Thus, National Union is only legally obligated to pay on the policy if the insured—SAK—is liable for the underlying claim. This record before this court is insufficient to reach this factual conclusion. Numerous documents reference several possible causes of the water intrusion. And, contrary to Navigator's claims, correspondence between different subcontractors complaining of poor quality concrete work by SAK does not resolve these genuine factual disputes. (Dkt. No. 69-3.) Summary judgment is inappropriate here because each of these issues involves genuine issues of material fact.

D. Excess Policies

Even if Navigators is able to establish SAK is liable and coverage exists, National Union argues its obligation to pay will not be ripe until other policies are exhausted. Specifically,

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 6

National Union points to Bayley's primary insurance, a Wausau policy, claiming it needs to be exhausted.

At oral argument, National Union conceded that Washington does not require horizontal exhaustion-a doctrine that would require all existing primary polices be tendered and exhausted prior to any excess policy coverage. In the alternative, National Union argues exhaustion is required by the terms of its own policy. The National Union policy states it will not:

> "make any payment under this policy unless and until the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** have been exhausted by the payment of **Loss**."

(Dkt. No. 82-4.) Further, the policy defines "Other Insurance" as:

> Other insurance means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

(Dkt. No. 73-1 at 31.) Based on its own policy language, Nation Union argues the Wausau policy must first be exhausted.

National Union's motion has two fatal flaws. First, under the National Union policy, the Wausau policy constitutes "other insurance" only to the extent "it applies to damages that are also covered by this policy." (Dkt. No. 73-1 at 25). Because the record on summary judgment is insufficient to determine if the National Union policy covers these losses, neither can this Court determine if the Wausau also covers these losses. Second, the Court agrees with Navigators that based on the agreement between Bayley, the general contractor, and SAK, the subcontractor, the Wausau policy is excess to both the subcontractor primary (Zurich) and excess (National Union and Navigators) policies. The Bayley/SAK agreement states:

> Subcontractor's liability insurance is primary as respects coverage afforded to the Contractor and Owner as additional insureds.

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 7

1  (Dkt. No. 68-5 at 20).  Although National Union vigorously contests the notion that a primary

2  insurance can be excess, it fails to cite any authority to support this proposition.

3  Based on this clear, unequivocal policy language, this Court finds the Wausau policy was

4  intended by the parties to be in excess of the SAK's polices.  Therefore, the Wausau policy does

5  not constitute "other insurance" and does not need to be exhausted prior to coverage by the

6  National Union policy.

    E.  CPA Claim

       National Union also moves for dismissal of the CPA claim arguing the claim fails as a matter of law because an excess has no duty to investigate and it may rely on Zurich's investigation.  This argument is contrary to Washington law.  Washington Administrative Code ("WAC") 284-30-330 prohibits an insurer from engaging in unfair claims settlement practices, which include failing to conduct a reasonable investigation.  Washington insurance law makes no distinction between primary and excess insurers.  See WAC 284-30-310.  Nor has any Washington court specifically exempted excess insurers from these requirements.  National Union's argument is especially specious in the present instance because they refused payment to the insured on the grounds they disagree with Zurich's investigation.  This Court therefore concludes that as a matter of law, summary judgment on the CPA claim is not warranted.

       National Union also moves for dismissal on the theory that Navigators fails to establish injury, a prerequisite to a CPA claim.  Navigators contends that due to National Union's delays in providing discovery, summary judgment on this issue is premature.  The Court agrees and does not reach the merits of this argument to permit the parties to complete discovery.

//

//

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 8

**Conclusion**

The Court GRANTS Chartis' motion for summary judgment (Dkt. No. 76), finding the Settlement Agreement failed to reserve and assign any claims against Chartis to Navigators. Because genuine issues of fact remain on the issues of coverage and exhaustion, the Court DENIES Navigators' motion for partial summary judgment (Dkt. No. 67) and National Union's motion for summary judgment (Dkt. No. 79). The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of February, 2013.

*[signature]*

Marsha J. Pechman
Chief United States District Judge

ORDER GRANTING CHARTIS CLAIMS'
MOTION FOR SUMMARY JUDGMENT (DKT.
NO. 76), DENYING OTHER MOTIONS FOR
SUMMARY JUDGMENT (DKT. NOS. 67, 79)- 9