UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONAL UNION FIRE INSURANCE CO.,<br><br>        Defendant. | CASE NO. C12-13-MJP<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

This is an insurance coverage dispute between one property insurer, Navigators Insurance Company ("Navigators"), against another excess insurer National Union Fire Insurance Company of Pittsburgh ("National Union"). Both Navigators and National Union move for summary judgment. Having reviewed the moving papers, the responses, and the record in this case, the Court orders as follows:

1. Navigators' motion for summary judgment on the contribution claim is GRANTED as to exhaustion of the Zurich Policy, but otherwise DENIED because genuine issues of fact remain for trial. (Dkt. No. 137.)

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 1

2. National Union's motion for summary judgment regarding number of occurrences is DENIED. (Dkt. No. 156.)

3. Navigators' motion for summary judgment on the bad faith is DENIED. (Dkt. No. 147.)

4. National Union's motion for Summary Judgment is GRANTED in part and DENIED in part. (Dkt. No. 162.)

**Background**

The underlying claim arose from the expansion of the Westfield Southcenter mall. Bayley Construction, the general contractor of the project, subcontracted with SAK to pour concrete for new parking decks. In 2008, water damage was discovered in the interior portions of the mall. (Dkt. No. 96). This case is the tail-end of a long dispute between the owner of the Southcenter mall, WEA Southcenter LLC, Bayley, and the insurers regarding insurance coverage for the water damage. (Dkt. No. 2-9.) This Court already outlined the general facts in its prior summary judgment order and does not repeat it here.

A. Policies

The pending motions involve the applicable policy language of both the primary and excess policies.

Zurich provided the primary liability insurance for two different policy periods: 2007-08 and 2008-09. (Dkt. No. 73.) Both policies contained the same applicable language. (Dkt. No. 47.) Zurich's 2007-08 Policy limited its coverage to the following:

> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. …We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

Case 2:12-cv-00013-MJP   Document 198   Filed 08/05/13   Page 3 of 18

> (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and… b. This insurance applies to "bodily injury" and "property damage" only if: … (2) The "bodily injury" or "property damage" occurs during the policy period

(Dkt. No. 73 at 21.) The Zurich Policy defined the term "Occurrence" as:

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Id. at 34.) The Policy also defined property damage as:

> **17.** "Property damage" means:
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

(Id.) In addition to the language limiting coverage, the Zurich policy also contained an anti-stacking provision that limits payment where two policies cover the same occurrence:

> 11. Two or More Coverage Forms Or Policies Issued By Us
> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence," the maximum Limit of insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. …

(Id. at 13.) For the 2007-08 Policy, Zurich's liability totaled $1,000,000 for each occurrence.

(Id. at 19.) SAK renewed the Zurich Policy in September of 2008.

National Union provided general liability insurance to SAK, in the capacity as excess insurer to the Zurich Policy. The National Union policy at issue here commenced on August 21, 2007 and terminated on August 21, 2008. (Id.) The 2007-08 Policy is limited in application to the following:

> We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** become legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**. Coverage under this policy will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 3

>other terms, definitions, conditions and exclusions of this policy. Provided, however, that the coverage provided by this policy will not be broader than the coverage provided by the policy listed in **Scheduled Underlying Insurance**.

(Dkt. No. 73-1 at 9.) Further, the Policy only applied if:

>the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period;

(Id.) Although the 2007-08 Policy was renewed, on September 15, 2008, SAK canceled it.

B. Tender and Claims Handling by National Union

On April 1, 2011, Bayley tendered a claim to Zurich and National Union relating to SAK's work on the mall. (Dkt. No. 147-1.) Bayley sent the letter to an incorrect address for National Union. (Dkt. No. 170 at 2.) National Union did not respond. (Dkt. No. 141). On June 1, 2011, Bayley again tendered its claim to National Union. (Dkt. No. 141.) This letter too was sent to an incorrect address. (Dkt. No. 170 at 3.) And, Bayley did not receive any response. (Dkt. No. 141.) On June 22, 2011, Bayley's counsel called National Union and reached an intake claim representative from Chartis. (Dkt. No. 141.) The claim was assigned to Michael Barnett. (Dkt. No. 170-7.) On June 28, 2011, Barnett and Bayley's counsel spoke on the telephone, which Barnett noted in the claims file. (Id.) National Union contacted Bayley throughout the summer of 2011. (Dkt. No. 170.) During these exchanges, Bayley requested National Union determine coverage for all applicable policies. (Dkt. No. 141.)

On August 3, 2011, National Union participated in a mediation regarding the claim. On August 15, 2011, National Union sent a letter to Bayley with its initial coverage determination. (Dkt. No. 170-9.) It concluded the work of other contractors was responsible for water damage to the Southcenter mall and declined coverage under the 2007-08 policy. (Id.) But, the letter stated National Union would continue to investigate the matter. The letter did not discuss the

2008-09 policy. Bayley had not specifically identified that policy, nor had National Union identified Bayley as an additional insured under that policy.

In September 2011, National Union advised Bayley of the cancelled 2008-09 policy and that it had not been reinstated. During the fall of 2011, National Union continued to discuss coverage issues with Bayley and investigate the claim. (Dkt. No. 170-17.)

On December 6, 2011, several of the parties involved in the underlying dispute attended mediation. (Dkt. No. 140). National Union did not participate. (Id.) National Union did keep appraised of the settlement talks, including attending a meeting with Bayley and its experts in January 2012. (Dkt. No. 170.)

On December 13, 2011, Bayley sent a letter to National Union requesting participation in the settlement negotiations, as required under Washington law. On December 14, 2011, Bayley sued National Union and other insurers. (Dkt. No. 2-9.)

As described in this Courts previous order, National Union did not participate in the 2012 settlement, wherein Navigators was assigned Bayley's claims. (Dkt. No. 96.)

**Analysis**

A. Legal Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to

prevail as a matter of law. Furnace v. Sullivan, 705 F.3d 1021, 1026 (9th Cir. 2013). If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007).

B. Motions to Strike

Navigators moves to strike many of the exhibits submitted by Defendant's counsel in her three declarations. Navigators contends that: (1) certain documents lack foundation or have not been authenticated; (2) Defendant's counsel lacks personal knowledge; (3) some of the exhibits contain hearsay statements. (Dkt. Nos. 166 at 11, 175 at 13) National Union moves to strike the declarations of Michael Mawson and Steven Amento, arguing the evidence is prejudicial.

1. Ribeiro Declarations

It is well established that unauthenticated documents cannot be considered on a motion for summary judgment. Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). To be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Id.; see also 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2722 at 58–60 (2d ed. 1983). A document lacking a proper foundation to authenticate it cannot be used to support a motion for summary judgment. Canada, 831 F.2d at 925.

However, under Evidence Rule 901, authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "The question of authenticity is left to the discretion of the trial judge and is reviewed on appeal

under an abuse of discretion standard." United States v. Blackie, 767 F.2d 1334, 1342 (9th Cir. 1985). The proponent of the evidence need only make a prima facie showing of its authenticity. Id. Importantly, "[d]ocuments produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." Anand v. BP West Coast Prods. LLC, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007).

Navigators moves to strike Traci Ribeiro's declaration filed in opposition to summary judgment. (Dkt. No. 166.) The Court GRANTS in part and DENIES in part the motion. The Court agrees Ms. Ribeiro fails to establish personal knowledge of the content in paragraphs 3 and 12 and the documents attached as Exhibit B and J. These are STRICKEN. However, the remaining objections are without merit. Ms. Ribeiro testified to receiving documents in the course of discovery and Navigators does not challenge their authenticity. They are therefore admissible. See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (Documents attached to an attorney's declaration are properly authenticated when documents were provided by the opposing party who did not contest authenticity and seeks only to challenge the attorney's ability to authenticate the documents).

Navigators also moves to strike the Declaration of Traci Ribeiro filed in opposition to Navigators' motion on the bad faith claims. (Dkt. No. 175 at 11-12). The Court GRANTS in part and DENIES in part the motion. The Court STRIKES paragraphs 23 and 28 and the attached exhibits of S and W because National Union fails to show Ms. Ribeiro fails to lay a proper foundation as to her personal knowledge. The Court finds paragraphs 2, 5, 9, 18, and 25 sufficiently based on Ms. Ribeiro's personal knowledge as counsel for National Union in this

1   case. As to Navigators generalized complaint the documents contain hearsay, the Court finds the
2   objection too broad to provide relief.

3       Navigators moves to strike Ms. Ribeiro's declaration pertaining to the bad faith claims.
4   (Dkt. No. 181 at 15-16.) The Court STRIKES paragraph 10 from the declaration and exhibit H
5   as lacking personal knowledge. (Dkt. No. 163.) The Court DENIES Navigators' request to
6   strike paragraphs 5 and 17.

7   2. Mawson Declaration

8      National Union moves to strike the declaration of Michael Mawson on the grounds he
9   was not made available for deposition. Mr. Mawson is an employee of Zurich. (Dkt. No. 160 at
10  11.) The record evidences no intent by Navigators to prevent National Union from taking Mr.
11  Mawson's deposition. Moreover, National Union, for reasons unknown to this Court, chose not
12  to pursue a previously scheduled deposition or seek this Court's assistance in obtaining one.
13  Because National Union fails to assert any grounds to strike the Mawson declaration, the Court
14  DENIES the motion.

15  3. Amento Declaration

16     National Union moves to strike the declaration of Steven Amento, complaining the
17  declaration contains new opinions and constitutes impermissible supplemental expert testimony.
18  (Dkt. No. 185 at 8.) The Court DENIES the motion. National Union argues Amento's
19  comments regarding the existence of damage manifesting after the parking garage was put to its
20  intended use never appeared in his original report. (Id.) The Court disagrees, finding Amento's
21  report as discussing damage continuing and changing after the initial reports of damage. (Dkt.
22  No. 139-1 at 3-4.) Because the conclusions are nearly identical, the Court DENIES the motion.
23  //
24

C. Motions for Summary Judgment on Exhaustion and Contribution Claim

Navigators moves for summary judgment on its contribution claim on the grounds all of the requirements to trigger payment by National Union on the excess policy have been met. National Union, in turn, argues genuine issues of material fact exist. National Union also contends these issues of fact preclude Navigators from ever proving the underlying insurance, Zurich, was exhausted. The Court GRANTS in part Navigators' motion, but DENIES National Union's motion.

1. Exhaustion of Zurich Policy

An excess insurer's obligation to pay is triggered when the insured incurs liability in excess of the limits of the underlying primary policies. Millers Cas. Ins. Co. v. Briggs, 100 Wn.2d 9, 13 (1983). The "excess insurer's 'obligation to defend and indemnify the insured upon exhaustion of the primary insurance is commanded by the terms of the excess policy itself.'" Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 670 (2000). As discussed in the Court's prior summary judgment order, the National Union Policy at issue here is only triggered if the 2007-08 Zurich Policy was exhausted. (Dkt. No. 96.)

Presented with the testimony of Michael Mawson, the Court agrees with Navigators: no genuine factual dispute exists as to whether the 2007-08 Zurich Policy was exhausted. Mawson attests:

> Based on Zurich's investigation and review of the [underlying claim] … Zurich has determined that the underlying claim triggered coverage under Zurich's Policy No. CPO 3999853-02 with policy period of September 15, 2007 to September 15, 2008…issued to SAK and providing for additional insured coverage to Bayley. Zurich's payment of $1 million under Policy No. CPO 3999853-02 with policy period of September 15, 2007 to September 15, 2008 ("07/08 Policy"), and the resulting exhaustion of the 07/08 Policy, was made based on clear evidence indicating that a covered occurrence and the covered property damage alleged in the underlying claim commenced and progressed during the spring and summer of 2008.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 9

(Dkt. No. 138 at ¶¶2.)  Further, Zurich had determined the claim involved a single occurrence. (Id.)  In accordance with the Policy's anti-stacking provisions, Zurich's payment of $1,000,000 under the 2007-08 policy exhausted the 2007-08 policy and the primary insurance.

National Union cross-moves for summary judgment on the grounds Navigators will never be able to prove the damage to the Southcenter mall involved a single occurrence and thus, the Zurich policy was exhausted by the payment of $1,000,000.  It contends: "Specifically, National Union does not have any obligation to provide coverage for the Southcenter Claim unless the $1 million that Zurich American Insurance Company …paid to settle the Southcenter Claim was for a single 'occurrence.'"  (Dkt. No. 178 at 8.)  As evidence, National Union points to the settlement agreement it claims "expressly states – and Navigators' own property damage expert has repeatedly acknowledged – that the Southcenter Claim involves at least two distinct 'occurrences.'"  (Id.)

National Union's motion is without merit.  First, the motion relies on inadmissible evidence.  The settlement agreement is inadmissible under Fed. R. Evid. 408 and ER 408, as National Union seeks to admit it for the purpose of establishing the underlying cause and liability.  See Elliott v. Stanton, 3:11-cv-01536-ST, 2012 U.S. Dist. LEXIS 86839, p. 5 (D. Or. June 22, 2012) ("The clear purpose of FRE 408 is to prevent settlement discussions from being used to establish liability in a case. As a result, parties can engage in full and frank settlement discussions without fear that their statements will be taken out of context and used to their detriment in court.").  Likewise, the letter from Richard Beal is a settlement communication, also barred by Fed. R. Evid. 408 and ER 408.  Further, it is also hearsay and inadmissible under Fed. R. Ev. 801.

1     Second, even if this Court overlooked the inadmissibility of this evidence, it does not
2 establish the record needed for National Union to win its motion. Under Washington law,
3 determining if there is one or multiple occurrences based on this language of the policy is a
4 question of law. See <u>Certain Underwriters at Lloyd's, London v. Valiant Ins. Co.</u>, 155 Wn. App.
5 469 (2010). This Court's decision in <u>Bayley Const. v. American Guarantee and Liability Ins.
6 Co.</u>, 2010 WL 4272454, 3 (W.D.Wash., 2010), applying Washington law to a nearly identical
7 case, is instructive. In interpreting the same definition of occurrence as the Zurich policy at issue
8 here, the Court found that water intrusion at a shopping mall, from a variety of construction
9 effects constituted a single occurrence. <u>Id.</u> at *3; <u>see also</u> <u>Certain Underwriters</u>, 155 Wn. App. at
10 475-76. Thus, even if multiple inter-related factors contributed to the property damage here,
11 under the Zurich policy it may constitute a single occurrence. The Policy language does not
12 support National Union's motion.

13     Because no genuine factual dispute exists on the exhaustion of the Zurich 2007-08 policy,
14 the Court GRANTS summary judgment in favor of Navigators on the issue of exhaustion.

15     2. Contribution Claim

16     Navigators also moves for summary judgment on the grounds SAK is legally liable for
17 the underlying claim, thus it argues, National Union's coverage obligations have been triggered
18 and it must pay its portion of the settlement amount. Navigators argument is two-fold: (1)
19 SAK's defective work caused the property damage; (2) this damage occurred in 2007 or 2008,
20 when National Union provided excess coverage. Much of the record offered by Navigators to
21 support its motion has already been considered by this Court and found insufficient for summary
22 judgment on the contribution claim. On second review, even with the addition of the expert
23 declaration of Steven Amento, the Court finds genuine issues remain for trial. First, there are
24

genuine disputes regarding whether the covered property damage occurred during the 2007-08 policy period. (See e.g. Dkt. Nos. 68-4, 96, 161-5, 139-1.) Further, the record shows continued disagreement regarding the cause of the damage. (See e.g. Dkt. Nos. 72-2, 140-1, 140-2, 140-3, 141-2, 161-3.) Further, much of the record presented here evidences a dispute between experts as to methodology. Mr. Amento's declaration largely consists of commentary on Mr. Gogel's approach. These opinions go to the weight of the evidence provided and does not show a lack of factual dispute. (Dkt. No. 139.) Because a genuine dispute exists, summary judgment is DENIED.

      A. Bad Faith and CPA Claims

Both National Union and Navigators move for summary judgment on the bad faith claims. (Dkt. Nos. 147, 162). Because these motions involve overlapping issues and evidence, the Court addresses the motions together.

      1. Bad Faith

Navigators moves for summary judgment on its bad faith claims, arguing National Union acted unreasonably in failing to investigate the underlying claim and engage in settlement negotiations. (Dkt. No. 147 at 20-23.) National Union counters it acted reasonably by promptly responding to communications, immediately investigating the claim, and remaining apprised of settlement negotiations. (Dkt. No. 162 at 7-8.)

Bad faith handling of an insurance claim is a tort analyzed under general tort principles: the existence of a duty, breach of that duty, and damages proximately caused by the breach. Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr. Inc., 161 Wn.2d 903 (2007). To prove that the insurer acted in bad faith, the insured must show the insurer's breach was "unreasonable, frivolous, or unfounded." Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558 (1998). The determinative

question on a bad faith claim is reasonableness of the insurer's actions in light of all the facts and circumstances of the case. <u>Anderson v. State Farm Mut. Ins. Co.</u>, 101 Wn. App. 323, 329 (2000).

Turning first to National Union's investigation of the claim, the Court finds in favor of National Union. Under Washington law, insurers are obligated to complete an investigation of a claim "within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time." WAC 284-30-370. Although National Union did not complete its investigation within the proscribed 30 days, the record shows the investigation could not have been reasonably completed in that amount of time. (Dkt. No. 141-11, email from Rick Beal noting that "it is likely an investigation into this high profile claim would take reasonably longer than thirty days.") Additionally, the record shows National Union investigated the claim within a reasonable time. On August 15, 2011, National Union issued an investigation letter evaluating the claim, requesting additional documents from Bayley, and seeking to cooperate with the insured. (Dkt. No. 170-9.) Further, the record shows that even after that initial coverage determination, National Union continued to investigate. (<u>See</u> Dkt. Nos. 170-10, 170-11, 170-12). Navigators argues National Union misrepresented the claims file and failed to adequately explain its decision. This contention is not supported by the record. National Union had extensive and on-going discussions with Bayleys and issued two different coverage determination letters. (Dkt. Nos. 170). Contrary to Navigators characterization, these letters adequately explained National Union's position and the applicable policies. (Dkt. No. 170-22.) On this record, the Court cannot find National Union acted in bad faith in its investigation.

Next, the Parties disagree about whether National Union acted in bad faith by not participating in the settlement negotiations. On this issue, the Court finds genuine issues of

material fact exist for trial. As discussed below, genuine issues of fact exist as to the reasonableness of National Union's decision not to participate in settlement negotiations. The Court therefore DENIES both motions.

    2. Violations of WAC 284-30-300 et. seq.

Navigators asserts various claims under WAC 284-30-300 et seq, regulations pertaining to the insurance industry including the claims handling and settlement. Both Navigators and National Union move for summary judgment. The Court GRANTS National Union's motion as to communication with the insured (WAC 284-30-360) and investigation (WAC 284-30-370, 330, 350), but DENIES both motions as to National Union's alleged failure to effect a settlement (WAC 284-30-330(6)).

    i. Communications

Navigators claims National Union failed to communicate by not responding to pertinent communications, in violation of WAC 284-30-360(1). That regulation provides:

> Within ten working days after receiving notification of a claim under an individual insurance policy… the insurer must acknowledge its receipt of the notice of claim.

WAC 284-30-360(1). Further:

> For all other pertinent communications from a claimant reasonably suggesting that a response is expected, an appropriate reply must be provided within ten working days for individual insurance policies.

WAC 284-30-360(3). Navigators contends National Union violated these provisions: (1) failing to timely acknowledge initial tender of the claim from Baileys; and (2) failing to respond to a December letter regarding National Union's investigation of the claim. (Dkt. No. 147 at 15-16.)

Navigators moves for summary judgment on violations of WAC 284-30-360, pertaining to communication with the insured, a claim it concedes was never raised in its original or amended complaints. (Dkt. No. 175 at 15, n.1.) A party cannot effectively amend its complaint

by raising a new theory on summary judgment. La Asociación de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1089 (9th Cir. 2010). Because this claim was never properly raised, the Court GRANTS summary judgment to National Union.

Even if the Court were to consider the alleged violations of WAC 284-30-360 and 330(2), it would nonetheless award summary judgment to National Union because Navigators cannot show a violation of the regulations. Navigators moves for summary judgment on letters it sent to the wrong address. (Dkt. No. 170 at 2-3.) As to these letters, Navigators is unable to show when National Union received them, if ever. Navigators is therefore unable to show National Union did not acknowledge the claim within the ten-day period proscribed in 284-30-360(1). In other instances of communication, National Union complied with the regulation by orally communicating with the insured and noting the conversation in its claim file. (Dkt. No. 141-13.) Finally, as to the December 13, 2011 letter, the Court disagrees with Navigators that once this suit commenced, National Union had an obligation to send written acknowledgements to the insured. See Stegall v. Hartford Underwriters Ins. Co., 08-668MJP, 2009 WL 54237 *3 (W.D.Wash. January 7, 2009)(insureds filing of suit halts claims settlement process and the parties are bound by the rules governing litigation). The Court awards summary judgment to National Union.

ii. Investigation

Washington law also requires an insurer to timely investigate the claim. WAC 284-30-370. As described in the preceding section, National Union investigated the claim within a reasonable time. No genuine factual dispute exists on this point. Additionally, Navigators argues National Union should have found the 2008-09 policy prior to September 2011. The record before this Court however, shows National Union sought additional information in order

1 to locate any other policies, consistently requested information from the insured, and upon
2 learning of the 2008-09 policy promptly notified the Bayley. (Dkt. No. 170 at 4-5, 170-10).
3 Further, Navigators offers nothing to overcome National Union's representations that it simply
4 has no method of locating an additional insured and could not have located the 2008-09 policy
5 sooner. The Court therefore GRANTS summary judgment to National Union on Navigators'
6 claims under WAC 284-30-370, 350, and 330(1).

   iii. Settlement

8 Navigators contends National Union violated Washington law by not attempting to settle
9 the claim, when liability was reasonably clear. Because the record contains genuine issues of
10 material fact as to SAK's liability, when the liability became reasonably clear to the parties, and
11 if National Union's explanation on this point was reasonable, the Court DENIES both cross-
12 motions. Washington law prohibits an insurer from "Not attempting in good faith to effectuate
13 prompt, fair and equitable settlements of claims in which liability has become reasonably clear."
14 WAC 284-30-330(6). Here there are genuine disputes about the reasonableness of National
15 Union's decision not to participate in or engage in settlement negotiations. (Dkt. Nos. 72-2 at
16 76, 148-2, 148-3, 149, 170-4, 170-9, 72-2 at 76, 170-17, 170-19, 170-21, 170-24, 72-7.)
17 Consequently, the Court DENIES summary judgment to both parties on this issue.

   3. CPA Claim

19 A Washington CPA claim requires a showing of (1) an unfair or deceptive practice, (2) in
20 trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his
21 business or property, and (5) which injury is causally linked to the unfair or deceptive act.
22 <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778 (1986). An
23 insured can establish the first and second elements of a CPA claim by establishing the insurer

acted in bad faith or violated any of the standards contained in WAC 284-30-330 through 30-410. Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323, 329 (2000).

National Union argues Navigators cannot establish the elements of a CPA claim because, having been compensated in the settlement agreement, it cannot show it suffered an injury. (Dkt. No. 162 at 12.) "[H]arm to the insured is an essential element of every bad faith or CPA claim." Werlinger v. Clarendon Nat'l Ins. Co., 129 Wn. App. 804 (2005). As evidence of injury or harm, Navigators offers the declaration of Steve Grasso, President of Bayley who testified the injury suffered by Bayley includes the additional legal fees and costs incurred to respond to National Union as well as legal fees associated with this case. (Dkt. No. 88 at 15.) Under Washington law, the injury element is met. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27 (2009) (diminishment of money or property interest, even if minimal, is sufficient to show injury).

National Union's reliance on National Union Ins. Co. v. Greenwich Ins. Co., 2009 U.S. Dist. LEXIS 53085 (W.D. Wash., June 22, 2009) is misplaced. Greenwich involved a different procedural posture: in Greenwich, the Court had already granted summary judgment on the coverage claims and awarded reimbursement to the insured. The Court therefore held the insured had been made full and could not show injury for purposes of a CPA claim. In contrast, Navigators stands in the shoes of Bayley, as an uncompensated party and the record does not show Bayley was fully compensated by the settlement agreement for the harm caused by National Union's alleged bad faith. Summary judgment in favor of National Union is therefore DENIED. Further, because Navigators has not prevailed in establishing its bad faith or violations of the Insurance Fairness Act, as well as the other elements of its CPA claim, its motion for summary judgment is also DENIED.

//

4.  Olympic Steamship

Navigators requests a ruling that it is entitled to attorney's fees under the Olympic Steamship rule. (Dkt. No. 147 at 24.) Having determined issues of fact remain the Court DENIES Navigators' motion for attorney fees as premature.

**Conclusion**

The Court GRANTS Navigators' motion for summary judgment as to exhaustion of the Zurich Policy, but DENIES the motion as to the contribution claim finding genuine issues of material fact exist for trial. (Dkt. No. 137.) Because National Union fails to offer admissible evidence and its argument is contrary to Washington law, the Court DENIES its motion for summary judgment regarding number of occurrences. (Dkt. No. 156.) As to the cross-motions for summary judgment (Dkt. Nos. 147, 162) on the extra-contractual claims, the Court GRANTS summary judgment to National Union as to bad faith communication with the insured and its investigation of the underlying claim. (Dkt. No. 162.) The Court also GRANTS summary judgment to National Union on its claims under WAC 284-30-300 et. seq. relating to communications and investigation. (Dkt. No. 162.) The Court DENIES both summary judgment motions as to the extra contractual claims relating to National Union's participation in settlement negotiations. Navigators' motion (Dkt. No. 147) for summary judgment is DENIED in its entirety.

Dated this 5th day of August, 2013.

Marsha J. Pechman
Chief United States District Judge